IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CALVIN W. GRAHAM,                              06-CV-6199-BR

                    Plaintiff,                 OPINION AND ORDER

v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

                    Defendant.


PHILLIP R. BROCKETT
388 S.W. Bluff Drive
Bend, OR 97102
(541) 330-5881

              Attorney for Plaintiff

---

      [1] On February 12, 2007, Michael J. Astrue became the
Commissioner of Social Security.  He is, therefore, substituted
as the Defendant in this action pursuant to Fed. R. Civ. P.
25(d)(1) and 20 U.S.C. § 405(g).

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904
(503) 727-1000
**MICHAEL McGAUGHRAN**
Regional Chief Counsel, Region X, Seattle
**JOANNE ELIZABETH DANTONIO**
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
(206) 615-2662

                    Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Calvin Graham seeks judicial review of the Social Security Commissioner's final decision in which he denied Graham's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Following a review of the record, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for further administrative proceedings.


## ADMINISTRATIVE HISTORY

Graham applied for DIB on December 3, 2002. Tr. 24.[2]  His

---

[2] Citations to the official transcript filed on November 8, 2006, are cited as "Tr."

application was denied initially and on reconsideration.  Tr. 54-56, 59-63.  Graham then applied for SSI on November 10, 2004, and that application was expedited so that it could be considered with Graham's DIB application.  Tr. 24, 864-66.  On June 9, 2005, a hearing was held before an Administrative Law Judge (ALJ). Tr. 867-909.  Graham and Vocational Expert (VE) Eileen Lincicome testified at the hearing.  Tr. 867.  Graham was represented by an attorney.  Tr. 867.

The ALJ issued a decision on November 9, 2005, in which he found Graham was not disabled and, therefore, was not entitled to DIB or SSI.  Tr. 38.  That decision became the final decision of the Commissioner on July 7, 2006, when the Appeals Council denied Graham's request for review.  Tr. 7.


## <u>BACKGROUND</u>

Graham was 50 years old at the time of the hearing and had a Bachelor of Arts in Business Management.  Tr. 25, 870.  Graham worked as a firefighter and paramedic from 1984 to 1996 and sustained two back injuries in the course of those duties. Tr. 192-93.  Graham underwent spinal operations on the L5-S1 and L4-L5 vertebra areas with the most recent surgery performed in 1997.  Tr. 393-94.  Graham also had multiple surgeries on his left knee.  Tr. 762-85.

Graham has been in drug rehabilitation programs at least

3  -  OPINION AND ORDER

twice for problems related to the use of prescription drugs.
Tr. 279, 307.  He has taken several different antidepressants and
has struggled with opiate addiction.  Tr. 280.  Graham has been
evaluated for possible post-traumatic stress disorder (PTSD).
Tr. 320, 486.  Graham has also suffered bilateral left elbow pain
and numbness.  Tr. 599, 639.

**STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th
Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this
burden, a claimant must demonstrate his inability "to engage in
any substantial gainful activity by reason of any medically
determinable physical or mental impairment which . . . has lasted
or can be expected to last for a continuous period of not less
than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner
bears the burden of developing the record.  *DeLorme v. Sullivan*,
924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla but less than a

4  -  OPINION AND ORDER

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld even if the "evidence is susceptible to more than one rational interpretation." *Andrews,* 53 F.3d at 1039-40. The court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1193.

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. §§ 404.1520(a), 416.920(a). Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R.

5  -  OPINION AND ORDER

§§ 404.1520(a)(4)(I), 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(d).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that he has done in the past.  *Yuckert*, 482 U.S. at 141-42.

*See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(f)(1).


## **ALJ'S FINDINGS**

To determine at Step One whether a claimant has generated enough earnings to establish he has engaged in substantial gainful activity, the ALJ must subtract the reasonable costs of items or services necessitated by a claimant's impairment from his income. *See* 20 C.F.R. § 404.1576(a). Although the ALJ stated Graham performed substantial gainful activity following the onset of his alleged disability, tr. 26, 37, the ALJ did not stop at Step One. Instead he indicated he was not performing the

necessary analysis to support this conclusion because he determined Graham's claim would end in an "unfavorable outcome [in any event] . . . based on medical considerations alone." Tr. 26, 37.

At Step Two, the ALJ found Graham's multiple impairments, including disc disease of the lumbar spine, knee injury, depression, pain-medication addiction, chronic pain disorder, and carpal tunnel syndrome, are "severe." Tr. 37.

At Step Three, however, the ALJ found Graham's impairments do not meet or equal the criteria of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 37.

At Step Four, the ALJ found Graham retains the RFC to lift and to carry 20 pounds occasionally and 10 pounds frequently; is unable to climb stairs, ramps, ladders, or scaffolds; can occasionally stoop, kneel, or crouch but not crawl; and can sit for 90 to 150 minutes if he is permitted to change positions intermittently. Tr. 37. The ALJ also found Graham cannot concentrate on complex material, should not interact with the general public, and should not work around dangerous hazards. Tr. 37. In accordance with the VE's testimony, however, the ALJ concluded Graham is able to return to his past relevant work as an administrative clerk or a dispatcher. Tr. 36, 37. Although the ALJ could have based his finding that Graham is not disabled

8  -  OPINION AND ORDER

on this conclusion alone, the ALJ continued to Step Five.

At Step Five, the ALJ found even if Graham could not perform past relevant work, he could perform jobs that exist in the national economy such as billing checker, repair-order clerk, and small-products assembler.  Tr. 36, 37.  Thus, the ALJ again concluded Graham was not disabled.  Tr. 37.


**DISCUSSION**

Graham contends the ALJ erred by (1) rejecting the opinion of Mark Herscher, D.O., who Graham contends was his primary-care physician; (2) rejecting the opinion of Allan Kirkendall, Ph.D., a psychologist who performed a consultive psychological evaluation on Graham; (3) rejecting the opinion of Marc Williams, M.D., who provided mental-health treatment to Graham; and (4) improperly discrediting Graham's subjective complaints regarding his pain level and mental symptoms.

**I.   Medical Opinions.**

When the record contains conflicting medical evidence, the ALJ is responsible for determining credibility and resolving the conflict.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on

substantial evidence in the record." *Id*. at 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ also must give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes*, 881 F.2d at 751.  When a medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id*.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id*. at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id*. at 600.


**A.   Dr. Herscher.**

Dr. Herscher began treating Graham on April 4, 2002, and treated him as late as August 19, 2003.  Tr. 300, 414.  In his March 5, 2003, opinion given on Graham's behalf as part of an Oregon Public Employees Retirement System (PERS) administrative proceeding, Dr. Herscher opined Graham had been "100 percent disabled" since November 15, 2002, and authorized indefinite medical leave for Graham beginning on that date.  Tr. 739.  Dr. Herscher asserted Graham's medical impairments include back and spine problems from surgeries, knee problems, depression, and addictive behavior.  Tr. 739.

It is undisputed that the ALJ did not specifically credit or discredit Dr. Herscher's opinion nor provide any reasons for failing to do so.  Although Dr. Herscher's opinion was provided as part of the PERS administrative hearing, it is significant and probative because, if accepted, it would likely lead to a conclusion that Graham is disabled within the meaning of the Social Security Act.  In addition, as noted, the ALJ must provide specific reasons for failing to consider significant probative evidence.  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

The Court, therefore, finds the ALJ erred when he, in effect, rejected Dr. Herscher's opinion and failed to give legally sufficient reasons supported by substantial evidence in the record for doing so.

11  -  OPINION AND ORDER

**B.   Dr. Kirkendall.**

On June 9, 2003, Dr. Kirkendall performed a psychological consultive examination on Graham to "provide a clinical picture of [Graham's] day to day functioning."  Tr. 314.

Graham asserts the ALJ "distorts" Dr. Kirkendall's opinion concerning Graham's ability to function socially and argues the ALJ gave too much weight to Graham's interactions with family members.  In particular, Graham points out that the ALJ did not consider all of Dr. Kirkendall's conclusions such as Graham's need for encouragement to function and the facts that Graham restricts his driving because of the pain it causes and often lets the telephone answering machine take messages rather than answer the phone due to depression.  Tr. 319-20.  Graham also contends the ALJ should have credited Dr. Kirkendall's conclusion that Graham is unable to seek out or to maintain employment.  Graham maintains Dr. Kirkendall discussed Graham's mental capacity to engage in job-related duties and concluded Graham could not engage in appropriate social interactions because of social anxiety, depression, irritability and anger, and inadequate adaptive skills.  Tr. 320, 29.

**1.  Dr. Kirkendall's Opinion.**

Dr. Kirkendall conducted an interview and medical-status examination of Graham and diagnosed him as having PTSD with delayed onset, chronic pain secondary to back injuries that

affected Graham's psychological condition, and a Global
Assessment Functioning (GAF) score of 50.  Tr. 318, 320-21.  *See*
*Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)("A GAF
score is a rough estimate of an individual's psychological,
social, and occupational functioning to reflect the individual's
need for treatment.").  Dr. Kirkendall opined Graham's
limitations rendered him "unable to either seek out or maintain
employment" of any kind.  Tr. 320-21.

### 2.    The ALJ's Decision.

Here the ALJ found Dr. Kirkendall's opinion was
conclusory and, moreover, unsupported by the findings revealed by
the examination he performed.  Tr. 29.  The ALJ also found Graham
was not completely candid with Dr. Kirkendall when he informed
Dr. Kirkendall that he was not taking any medication for pain
even though he had received the pain medication Vioxx from
another physician around this time.  Tr. 28 n.1.  Although Dr.
Kirkendall concluded Graham was only minimally able to keep up
his personal hygiene and social functioning, the ALJ pointed out
that Graham showered twice a week, brushed his teeth twice a day,
held a driver's license, owned a car and maintained insurance,
and managed his personal finances.  Tr. 29, 314-21.

Dr. Kirkendall also assessed Graham with a GAF score of
50, but the ALJ concluded this score rested on Dr. Kirkendall's
opinion that Graham had "no friends with whom he socializes."

The ALJ, however, noted Graham has social interaction with his family, including "a lot of contact with his parents and remains particularly emotionally close to his mother" and sees his brother about twice a month.  Tr. 29, 316, 321.  In addition, even though Dr. Kirkendall concluded Graham "has marked problems related to his social environment," the ALJ pointed out that Dr. Kirkendall did not note any signs of social difficulty while he examined Graham.  Tr. 28-29.  In fact, Graham drove himself to his appointment with Dr. Kirkendall, arrived on time, engaged in a normal conversation, employed a vocabulary indicating above-average intelligence, discussed a proverb appropriately, showed no signs of problems concentrating, and spoke in an understandable manner at all times.  Tr. 28-29, 318, 320.  Moreover, although Graham stated he experienced social anxiety, Dr. Kirkendall did not find him to be overly anxious at any time.  Tr. 28, 318.

An ALJ may discredit "treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings."  *Batson*, 359 F.3d at 1195.  Here the ALJ found Dr. Kirkendall did not provide any support for his terse conclusion that Graham is "unable to either seek out or maintain employment."  Tr. 29, 321.  Thus, the ALJ may reject Dr. Kirkendall's conclusory opinion.  Moreover, the decision as to whether a claimant can work at available jobs that

exist in the national economy rests with the ALJ rather than a medical-care provider.  *See, e.g., Tackett*, 180 F.3d at 1098.

Dr. Kirkendall's conclusions also are contradicted by the State Disability Determination Services (DDS)[3] psychologist Frank Lahman, Ph.D.  Tr. 323.  Dr. Lahman concluded Graham suffered only mild restrictions in daily living; moderate difficulties in social functioning; and mild difficulties maintaining concentration, persistence, and pace.  Tr. 333.  Dr. Lahman also found Graham did not experience episodes of extended-duration decompression.  Tr. 333.

Because Dr. Kirkendall's opinion is contradicted, the ALJ must provide "specific, legitimate reasons" for rejecting it. *Magallanes*, 881 F.2d at 751.  *See also Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006)(specific, legitimate reasons were required to reject a physician's opinion when it was "inconsistent with the brief, conclusory opinion of the state agency reviewing physician.").  Dr. Lahman apparently is a nonexamining physician.  Although his contradictory opinion alone is not sufficient to provide the basis for rejecting Dr. Kirkendall's opinion, *see Lester*, 81 F.3d at 831, the ALJ has provided sufficient additional reasons supported by the record

---

[3] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

for rejecting Dr. Kirkendall's opinion.

The Court, therefore, concludes the ALJ did not err when he rejected Dr. Kirkendall's opinion because the ALJ gave legally sufficient reasons supported by substantial evidence on the record for doing so.

### C.   Dr. Williams.

Dr. Williams treated Graham for symptoms of depression and PTSD between January 12, 2004, and January 3, 2005.  Tr. 472-86, 560-65.

#### 1.   Dr. Williams's Opinion.

On October 9, 2004, Dr. Williams reported the following clinical findings as to Graham's condition:  depressed mood, low energy and motivation, poor appetite and concentration, anhedonia, suicidal thoughts, traumatic flashbacks, avoidance of reminders, sleep disturbance, and foreshortened future.  Tr. 473. During his treatment of Graham, Dr. Williams prescribed several medications and recommended Graham seek counseling.  Tr. 481. Dr. Williams opined Graham was experiencing extreme difficulties with social functioning and marked difficulties with concentration, persistence, or pace.  Tr. 477.  In addition, Dr. Williams concluded Graham was unable to meet competitive standards in making simple, work-related decisions; completing a normal work day or week without psychologically-based interruptions; performing at a consistent pace without an

16  -  OPINION AND ORDER

unreasonable number of rest periods; and dealing with normal work stress. Tr. 475. Dr. Williams assigned Graham a GAF of 55 and noted Graham's highest GAF in the last year was 60. Tr. 31, 473.

In his final documented visit to Dr. Williams, Graham advised he had started drinking alcohol heavily and overusing pain medication. Tr. 565. Dr. Williams noted this combination might have contributed to a possible suicide attempt. Tr. 565. Dr. Williams also noted Graham exhibited signs of bipolar disorder and recommended treatment for that condition. Tr. 565.

**2. The ALJ's Decision.**

Graham contends the ALJ ignored Dr. Williams's opinion when assessing Graham's RFC. Graham also maintains his limitations might equal a listing impairment if Dr. Williams's opinion is credited in full. In addition, Graham contends Dr. Williams's opinion should have been considered at Step Five. Graham points to the VE's testimony that an individual with extreme difficulties in social functioning and marked difficulties in concentration, persistence, or pace "would not be able to sustain competitively" in a work environment. Tr. 896-97.

The ALJ, however, concluded Dr. Williams's opinion that Graham exhibited a limited ability to understand detailed instructions and to maintain concentration, persistence, and pace likely resulted from Graham's "self reports alone." Tr. 35, 473-

74.  Graham, in turn, contends the ALJ was speculating when he reached this conclusion.

Dr. Williams listed Graham's limitations under a questionnaire section that asked Dr. Williams to describe "clinical findings" pertaining to Graham.  Tr. 473.  The record, however, does not reflect a basis for Dr. Williams's findings. The ALJ noted there was not any evidence that Dr. Williams conducted "cognitive testing" of Graham to determine his level of mental functioning.  Tr. 35.  Indeed, the record indicates Dr. Williams's mental-status examinations most likely consisted of mere observations and discussion.  Tr. 482, 486.  Moreover, Dr. Williams assessed Graham with a GAF score ranging from 55 to 60, which indicates only moderate impairment.  Tr. 484, 473.  The ALJ also pointed out that on Graham's January 3, 2005, visit, Graham did not tell Dr. Williams that he had started working even though this fact might be relevant to his GAF score.  Tr. 35, 565, 871.

More significantly, however, the ALJ noted Graham's apparent withholding of information from Dr. Williams initially regarding his drug and alcohol habits.  The ALJ also noted Graham told Dr. Williams on January 3, 2005, that he had been using pain medications and drinking heavily.  Tr. 35, 565.  Dr. Williams stated Graham "did not admit when we first evaluated him that he had problems with drugs or alcohol, but now says he is being more

18  -  OPINION AND ORDER

honest with himself." Tr. 35, 565. Thus, the ALJ supported his rejection of Dr. Williams's October 2004 opinion on the grounds that it easily could have been based on incomplete information; *i.e.*, Dr. Williams did not learn all of the relevant information until January 2005, and Dr. Williams did not treat Graham after January 2005.

The Court, therefore, concludes the ALJ did not err when he, in effect, rejected Dr. Williams's opinion because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

## II. Credibility of Graham's Testimony.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). When construing credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

When assessing a claimant's credibility, the ALJ must apply the threshold test articulated in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). The ALJ first must determine whether there is

objective medical evidence of an impairment and whether the impairment could reasonably cause some degree of the claimant's symptom(s). *Id*. at 1407. "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citations omitted). When determining credibility, an ALJ can use ordinary techniques such as the "claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

**A.  Graham's Testimony.**

Graham testified at his hearing that he had chronic pain related to back and knee injuries that sometimes reached 9 or 10 on a 10-point scale, had been treated in a residential facility for opiate addiction, suffered PTSD and depression resulting from job-related trauma as an emergency services technician, experienced periods of social isolation, and did not interact well with the public while working as a grocery-store cashier in 2005. Tr. 875-91.

Graham contends the ALJ failed to address the effects of his chronic pain disorder properly, and, therefore, the ALJ erred when he found Graham's testimony was not completely credible. Moreover, Graham contends the ALJ provided only vague reasons for

his conclusion about the effect of Graham's mental symptoms on his credibility.  Although the ALJ noted Graham probably has a significant history of some sort of mental disorder and treatment, Graham contends the ALJ did not state how that affected his assessment of the reliability of Graham's testimony.

**B.    The ALJ's Decision.**

The ALJ stated:

> It is reasonable to conclude that [Graham] does suffer musculoskeletal pain related to his history of a need for multiple back and knee surgeries, and that he has lifting/carrying/gripping limitations with respect to positive left carpal tunnel findings.  However, the claimant reports limitations that exceed what would be warranted by objective findings.

Tr. 34.

The ALJ found Graham has chronic pain disorder.  Tr. 37.  As the Ninth Circuit has recognized, this condition "has both a physical and psychological component." *Lester*, 81 F.3d at 829. "Given that the . . . physical and mental impairments are so inextricably linked, the Commissioner must consider whether these impairments *taken together* result in limitations equal in severity to those specified by the listings."  *Id.* at 829-30 (emphasis in original).  In light of *Lester*, Graham contends the ALJ did not evaluate Graham's testimony and subjective complaints properly.

The ALJ concluded inconsistencies pervaded Graham's

assessment of his limitations and his testimony concerning his
mental limitations.  In particular, the ALJ pointed out that
Graham "has not always been forthright with his medical providers
regarding substance and alcohol abuse."  Tr. 34.  For example, as
noted, Graham apparently withheld significant information from
Dr. Williams.  Graham also withheld information from Linda
Carroll, M.D., who was treating Graham for pain.  Tr. 34, 623-28.
On November 11, 2004, Graham told Dr. Carroll that he did not
drink alcohol.  Tr. 630.  On December 28, 2004, however, Graham
told Dr. Carroll about an incident in which he was "washing down
the methadone with Vodka."  Tr. 623.  Graham also failed to tell
Dr. Carroll that he was taking other prescription drugs such as
clonazepam, nortriptyline, and naproxen while she was treating
him.  Tr. 623.  After Dr. Carroll became aware of Graham's other
prescription drug use and the possible overdose incident,
Dr. Carroll advised she "really did not have anything further to
offer" Graham by way of treatment.  Tr. 624.  Dr. Carroll also
noted no further appointments were made with Graham.  Tr. 624.

The ALJ also had doubts about Graham's credibility
concerning his alleged PTSD and other mental limitations.  The
ALJ concluded Graham's alleged suicidal ideation was not credible
in part because he told Dr. Williams that he would never actually
follow through due to the profoundly negative impact on his
children.  Dr. Williams, therefore, did not think suicide was a

threat.  Tr. 34-35.  Even though Dr. Carroll reports Graham told
her that he was "perhaps" trying to kill himself as part of a
December 23, 2004, incident in which he consumed methadone with
Vodka, the ALJ concluded the incident was "not believed to be a
true suicide attempt as much as a re-enactment of his addictive
behaviors" based on Dr. Carroll's notes about the incident.
Tr. 35, 623.  Finally, the ALJ pointed out that Graham became
drug-free and regularly exercised after he went through drug
"detox" programs.  Tr. 35.

Even though Graham once stated he could not sit for more
than a few minutes, the ALJ noted Graham testified he could sit
for a few hours and that he relieved pain by showering or using
ice packs.  Tr. 34, 888.  The ALJ also pointed out that Graham is
apparently able to sit long enough to drive to the nearest town
about nine miles away to check his mail and to run errands.  Tr.
34.

In addition, the ALJ noted medical evidence that seems to
contradict Graham's reports of his pain levels.  A June 2003 MRI
revealed only mild disc abnormalities above Graham's L4-S1
levels, and a bone scan was negative.  Tr. 28, 428-29.  In
addition, Stephen Fuller, M.D., and Gerald Reimer, M.D.,
conducted physical examinations and reviewed Graham's medical
records.  Tr. 29-30, 391-410.  Drs. Fuller and Reimer opined
Graham's vertebra fusions at L5-S1 and L4-L5 were solid, and it

23  -  OPINION AND ORDER

was not medically probable that these areas continued to cause
Graham pain or required further treatment.  Tr. 29-30, 391-410.
They also found it likely that Graham's back pain originated
around the L3-L4 level, but it might be "receiving a contribution
from his tendency to narcotic addiction . . . [and] there are
some secondary gain situations in play" even if a genuine back
problem exists.  Tr. 30, 405.  Thus, they found Graham's
complaints of pain at a level of 10/10 were "over the top" at
that time.  Tr. 30, 405.

In *Verduzco v. Apfel*, the plaintiff argued the ALJ had
improperly disregarded his assertions of excess pain and fatigue.
188 F.3d 1087, 1090 (9th Cir. 1999).  The ALJ relied on
inconsistencies in the plaintiff's testimony and behavior such as
the plaintiff's inconsistent testimony about his drinking, the
plaintiff's apparent attempt to exaggerate his physical symptoms
by walking with a cane when two doctors had stated it was
unnecessary, and the plaintiff's behavior at his hearing that
indicated he was not in as much pain as he asserted.  *Id.*  The
Ninth Circuit held "the ALJ did offer clear and convincing
evidence for rejecting" the plaintiff's testimony.

Here the ALJ cited substantial evidence in the record to
support his finding that Graham's testimony as to his physical
and mental impairments were "not totally credible."  Tr. 37.
Thus, the Court concludes the ALJ did not err because he provided

24  -  OPINION AND ORDER

legally sufficient reasons supported by substantial evidence in the record that Graham's testimony was not entirely credible.

## REMAND

The decision whether to remand for further proceedings or for the payment of benefits is a decision within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). This decision turns on the likely utility of further proceedings. *Id.* at 1179. The Court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

25  -  OPINION AND ORDER

When it is not clear whether the ALJ would be required to award benefits if the improperly rejected evidence were credited, the Court has discretion as to crediting the evidence. *See Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).

As noted, the Court concludes the ALJ did not properly consider the opinion of Dr. Herscher.  The effect of crediting Dr. Herscher's opinion is not clear.  If Dr. Herscher's opinion were credited, Graham's RFC would have to be reassessed and any additional limitations would have to be included in the hypothetical to the VE. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006)(when posing hypotheticals to a VE, the ALJ may not "disregard properly supported limitations.").

The Court, therefore, concludes remand for further administrative proceedings consistent with this Opinion and Order is necessary.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 19th day of April, 2007.


                                    /s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

27  -  OPINION AND ORDER